All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, everybody, wherever you may be. We've had a series of technical glitches and things this morning, for which I apologize on behalf of the Court. And we have two cases for argument today, I believe. And the first case is Erwin versus County of Churchill. Counsel, you're appearing, both of you are on Zoom. So, Mr. Busby, you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Luke Busby, and I represent the appellant Michael Erwine. And I'd like to reserve five minutes of my time for rebuttal, if I may. Yes, please watch the clock. Thank you, Your Honor. This case involves whether a genuine issue of material fact exists as to whether Sheriff Benjamin Trotter violated Mr. Erwine's right to due process under the 14th Amendment. The essential facts underlying this case are not genuinely in dispute. During 2016, Mr. Erwine worked as a deputy sheriff for Churchill County for just under a year, worked in the detention department of the jail. He observed his co-workers mistreating inmates, in particular Mr. Bolu. He wrote down what he observed regarding Mr. Bolu, and Sheriff Trotter fired Erwine for alleged misconduct associated with the Bolu incident, and an incident involving Mr. Matthew Mays, the facts underlying which Mr. Erwine sharply contests. Mr. Trotter drafted an October 10th, 2016 memorandum before firing Erwine. Excuse me. Can I ask you to help, try to help us harmonize different cases? For example, in Stretton, you look at the nature of the charge, and not the consequences, but then in Blance, it seems to make, or appear as if the consequences are dispositive. How should we try to harmonize those two cases? Your Honor, I believe in the Stretton case, the Ninth Circuit directed the court to look at the effect of the charge, and I don't really think Blance is substantially different in that Blance… It said the nature of the charge used as a grounds for termination, and not the actual consequences of the charge. Your Honor, my understanding of the Blance decision is that it requires that a person show effective exclusion, and I believe that those two terms are not necessarily in conflict. I think Blance could be misinterpreted to require actual exclusion from a profession, but effective exclusion is different. It basically requires that the gravity of the statement is such that any reasonable person hearing it would understand that the person isn't qualified to do the job morally or otherwise, and so… How do you define effective? Does that mean that you have to apply to every employer, and every employer has to reject you, or just the ones that are aware of the statement have to reject you? How would you define effective here? Your Honor, I think first you would look at the content of the accusation at issue, and whether it rises to the level of questioning a person's reputation for honesty or morality. And in that case, the Blance decision says those statements are sufficient. Blance then says you analyze less severe statements on a case-by-case basis. In this case, we believe we meet the standard of showing that Mr. Irwin's reputation for honesty and morality was called into question by the accusations. But even if the court doesn't accept that, that effective exclusion is shown by the terms of the words used, the accusations made against him, and the effect those terms had on those who heard him, including Washoe County not offering Mr. Irwin a job, and more particularly, the Las Vegas Metropolitan Police Department indefinitely disqualifying Mr. Irwin from even being able to apply for a job there, based on what they were told. Could I ask you a question? What specific language in the Trotter memo do you think goes to honesty or morality? Is it, you know, hidden word document? Is it whispered with the inmate about a potential lawsuit, communicated secret? I mean, what is the specific language here? Your Honor, I believe the most outstanding statement on that question is that he engaged in conduct on becoming a deputy. And on that point, that questions whether he acted in an immoral way by what he did during the course of his duties at Churchill County. There's other statements that also call into question his morality or honesty, that he used an unjustifiable use of force against an inmate. You know, he didn't use any force against the inmate. Just as a matter of fact, he engaged in unprofessional behavior. And there's also an accusation that he discredits our agency and our profession. Now, stating that a person discredits an entire profession by their conduct is a statement about, it's a moral judgment about that person's activities as a police officer in this case. And also the hidden word document is also an accusation that implies, if not literally states, that he was being deceptive. That he was trying to hide something from his employer, I guess, presumably because they believed or stated that he was trying to assist an inmate in a case against the jail, which is not what occurred at all. Those statements, we think, are sufficiently stigmatizing under any reasonable standard, whether it be the honesty or morality standard or the less severe statements that are analyzed on a case-by-case basis under glance. So what do we do with the fact that, in fact, Mr. Irvine did obtain employment in his chosen line of work? Your Honor, we were able to show via declarations from the two tribal police departments that employed him that they never spoke to Churchill County and they never saw the memorandum. And this again goes to the question of effective exclusion, which is what you're required to show under the law to state a claim, and actual exclusion. My understanding is that the Trotter memo was a public record or a public document available for anybody to see. That is not the case, Your Honor. Nevada has a very particular statutory framework for disclosure of the records of police officers under, I believe it's Chapter 239B. And under that statute, those records are made available to other law enforcement agencies for review. The process is essentially when you apply for a law enforcement position, you sign a waiver saying you're allowed to obtain any information under law that you're entitled to obtain. And, in fact, I can never see what you obtained as part of your background investigation. So when Irvine applied to subsequent jobs as a police officer after he left Churchill County, his file was available, if not actually sent to the police departments with whom he was applying to public safety agencies as is defined in the statute. And we don't think tribal entities qualify as public safety agencies under that statute. Therefore, at least in these two cases, they didn't obtain his employee file from Churchill County, or the evidence indicates, the declarations we received indicates that they never spoke with anyone. Can I ask you though, but Blantz says you have a liberty interest in your profession as a police officer and not a placement with a particular employer. So under Blantz, they may not be making the distinction you are between tribal police and municipal police. Understood, Your Honor. Mr. Irvine doesn't have an interest in a particular employer, and Blantz is very clear on that point. But our position is, and we think the evidence shows, and there's a genuine issue of material facts showing that the statements are so severe that they would result in effective exclusion from the profession as a whole. We also have an expert witness who testified to that fact that, you know, the memorandum is a career killer. So can you straighten me out on something on these cases? Does the statements just have to effectively exclude him completely from his line of work, or do they also have to implicate his morality and honesty? Your Honor, we believe that when there's a question of morality or honesty, that that basically is sufficient to show that an inquiry hearing is required. But there seems to be, for less serious statements, other tests, such as whether there's effective exclusion. The Ninth Circuit and other courts have carved out this very particular class of stigma-plus claims for public employees where contemporaneous with their discharge or termination from public employment, if a stigmatizing document is placed into their file, that triggers the requirement for a name-clearing hearing if the accuracy of the charge is contested. There's some disclosure of the charge, and it's made in connection with their termination. Now, for less serious accusations, there's different ways that the courts have handled stigma-plus claims. Blants, for example, doesn't involve a case where there was a stigmatizing memorandum placed in a file. It was statements that were made in response to questions like references when she applied to other positions. And a lot of other cases, that's what you see, is stigmatizing statements made after the fact, not contemporaneous with discharge along with placement in an employee file. Does that answer your question, Judge? I see what you're saying. In what category of statement would you place the statement where Chief Trotter says that it seems as if Irwin is siding with the inmate against his own agency or encouraging civil action against his own agency? Well, I think that questions his morality as a police officer. It accuses him of being disloyal to his employer, of plotting against his employer, essentially. And those, for a police officer, are very serious accusations. And Mr. Irwin never took any steps in that direction. He basically just recorded what he saw. He planned on sharing it with his supervisor at the end of his shift before he was fired. He never got the chance to do that. And so those statements go to his reputation for honesty and morality. And those are, by definition, stigmatizing statements that will and have had the effect of destroying a person's career in law enforcement without due process. Okay, you want to save some time? You've got three and a half minutes. Your Honor, I believe I saved five minutes for rebuttal. Right, but you can't save time you don't have. So you only have three and a half minutes left. Okay, so why don't we hear from Ms. Parks? Good morning. Thank you, Your Honor, and thank you for having me here. Basically, it is the position of Churchill County and Benjamin Trotter, Your Honors, that the test in the Ninth Circuit is clear. As related to what the subject matter of this case is. What we are talking about in this case is one thing in particular. A very specific liberty interest substantive due process claim. That claim is based upon Mr. Irvine's right to pursue the occupation of his choosing. We believe that the undisputed facts in this case show that Mr. Irvine cannot prevail on this claim and that the district court was correct in its holding. It is undisputed that Mr. Irvine has gone back to work and did go back to work and was working as a law enforcement officer at the time that this matter was briefed. Mr. Irvine's employment in his chosen field demonstrates that he was not subjected to stigmatizing statements upon which he can base the 14th Amendment liberty interest claim. But is that because they didn't have access to the stigmatizing statements? How should we weigh that? Well, I think under the Nevada statute, the tribal municipal or the tribal police departments are not entitled to that information, unlike municipal and state law enforcement agencies. Well, I'm not at all sure that if the tribal agencies hadn't contacted the Churchill County Sheriff's Office. There's no evidence of that in the record, is there? There's no evidence that they did so. I would also say there is not a single case that I have that I have reviewed in connection with this matter that suggests that there is an additional element to this test that says that you must prove that a particular employer obtained statements from the prior employer. But before a person is is unable to take advantage of this type of liberty interest claim, it is the it is the right to engage in the occupation of your choosing. And Mr. Irvine clearly has not been prevented or excluded from the profession of his choice, which is the profession of a law enforcement officer. The case law does not add as an additional element that you must show where the information came from or that a specific employer obtained information from the previous employee. In this case, I think it just shows the fact that the Trotter memorandum, which the evidence shows, went to one particular agency and that another received certain information from Sheriff Trotter, not that Mr. Irvine was engaging in conduct unbecoming. I think that goes to the fact that that there was very limited disclosure of the Trotter memo itself and that Mr. Irvine was able to obtain employment in his chosen profession following his termination from employment with Churchill County. How should we harmonize Cox, which says that stigmatizing statement and termination is sufficient with Blantz, which requires the effect of exclusion from your choice? Right. I in I think that the important element in Blantz and the cases that were decided after that is that when it relates to a very particular liberty interest based upon the right to engage in your occupation of choosing that as the case law has developed, you must show effective exclusion from your chosen profession. And if you'll allow me, Your Honor, excuse me, I'm pulling my copy of the Cox decision right now. Now, the agency that received the memo and the agency that at least had an officer speak with Officer Trotter, they told him you're not eligible based on your background history and don't ever apply again. Isn't that right? There were there there were several. And when I say several, there were two agencies after Mr. Irvine's resignation or termination from employment from Churchill County that indicated he was not eligible to reapply. There were other agencies that indicated that he was permitted to reapply and that he was not he was not barred from doing so. Those specific agencies include the Reno Police Department that on March 1st of 2018. Right. Remind me. And I'm sorry, I don't have it at my fingertips. The two that said don't ever, ever apply again were ones that did get information from Mr. Trotter or Officer Trotter. Isn't that right? Well, one one particular one did that would be the Las Vegas Metropolitan Police Department. There was no evidence that they received the Trotter memo, but there is evidence that there was a phone call between former Sheriff Trotter and background investigator for that agency. Although there's no indication that that specific details were provided to that particular individual or that the terms conduct on becoming hidden word document were used. The Las Vegas Metropolitan Police Department incident, it was conveyed by and I'm sorry, is Trotter the sheriff or the chief? I apologize. Yeah, not at all. Sheriff Trotter was the former. Yes. The Andrew Bullough incident. Correct. The hidden word document to that police department. Well, actually, yeah, actually, there is not specifics mentioned in the documentation received from the Las Vegas Metropolitan Police Department as to exactly what was conveyed by Sheriff Trotter to the investigator. What it says is, is that that Sheriff Trotter believed that Mr. Irwin was not a good fit, that he was siding with an inmate over the department and that there's also a reference to him wanting to leave the detention and not paying attention to detention. His detention position. Here's my question on summary judgment. You have to draw all reasonable inferences in the plaintiff's favor. And if you label a law enforcement officer a snitch as someone who is going to be a whistleblower to mistreatment of inmates, I think a reasonable jury could conclude that that would effectively exclude you from the profession. I just I think it's a very reasonable inference that that is a career ending move for any law enforcement agency that finds out that you are a whistleblower for inmate abuse. Well, other than it just simply didn't happen in this case, Your Honor, the evidence is not that Mr. Irwin was excluded from his chosen profession. He was indeed a law enforcement officer and gained a job in his in his field of choice. And I think under the case law in the Ninth Circuit, what is of concern is the video surveillance actually corroborated Mr. Irwin's account of what happened with Andrew Bullo. And I'm sorry, I may not be pronouncing that individual's name correctly, but, you know, the agency seems more intense on dealing with Mr. Irwin than the people who actually denied that inmate water for hours and flushed the toilet anytime he requested water to drown out the request. Well, I don't I don't know that I 100 percent agree, Your Honor, about what the video did or didn't show. What I would say is that you didn't dispute it in your briefs. Right. You didn't dispute that the video surveillance corroborates Mr. Irwin's account of what happened with inmate Andrew Bullo. Well, I think your briefs. Are you disputing it now? I didn't mean to interrupt you at all, Your Honor. I think that the reason that we didn't go into that in any great detail is it is not a fact that is material to a decision on the 14th Amendment claim in this case. And I do want to make clear, I'm not sitting here, nor are my clients who I know are listening in, suggesting that Mr. Irwin does not have a potential cause of action or grounds to seek redress of his grievance. What we're saying in that this is not having elected to proceed on a 14th Amendment substantive due process claim based on his liberty interest. But the fact that he gained employment in his chosen field after his termination from employment with Churchill County is dispositive here. I mean, in Mr. Irwin's brief, he talks about the fact that, you know, he should not be discouraged as a law enforcement officer from raising issues such as the alleged mistreatment of inmates. I'm not at all suggesting that Mr. Irwin doesn't have an avenue to redress that grievance. Having elected to proceed on the 14th Amendment, though, and this very particular liberty interest type claim that the Ninth Circuit has said, you know, is reserved for extreme cases that amount to total blacklisting, effective exclusion. The 14th Amendment is not what provides an avenue for recovery in this case based upon the undisputed material fact that he went back to work in his chosen field as a law enforcement officer. Under your reading of plans, you see this as more of a rightness issue, rather, so that if his current employer finds out about the statements made in the memo and then he's terminated, then would he have a right claim? Interesting question. I'm sorry that I paused in that way, Your Honor, because I haven't particularly thought about it. I suppose the inference from your argument, right, you're saying the fact that he got employment in his chosen field is a dispositive factor. So once you remove that, assuming that he can demonstrate a nexus to the stigmatizing statements, that's a claim under your argument, correct? I think that very well could prove to be a claim. It's just not, it just doesn't track with the facts of this case, which include that Mr. Irwin actually obtained employment with two different law enforcement agencies. There's no claim in this case that Mr. Irwin's separation from employment with one of the two had anything to do with the statements attributed to Sheriff Trotter or set forth in the memorandum. It doesn't impact the appeal, but what is the status of the state law claims? The state law claims were dismissed by the court on jurisdictional grounds. To my knowledge, as we sit here, they have not been refiled, is the status of that particular claim. I'm going to ask another question on Blants. If you assume that effective exclusion means actual exclusion, then doesn't that make effective superfluous? I don't think that it would make effective superfluous necessarily, Your Honor. And I think that again, focusing on the facts of this case, when we talk about actual versus effective, Mr. Irwin went back to work as a law enforcement officer. Effective exclusion, I think, means the statements have the effect of excluding someone from their chosen profession. Again, in the particular case here, the substantive due process liberty interest guaranteed by the 14th Amendment, it is what this court has defined as an occupational liberty. So that means the very interest involved is your right to work in your chosen field. Mr. Irwin was not effectively excluded from employment in his chosen field. Can you be effectively excluded if just not every employer has had access to that allegedly stigmatizing statement? Well, I don't necessarily think that that's the case. And again, I think when you look at the language used by the Ninth Circuit, when it talks about extreme cases and blacklisting, I think that that would not be how I would read those cases. So I think here, effective exclusion, Mr. Irwin has not shown that he's been effectively excluded from his profession as a law enforcement officer. And, Your Honor, I think that, again, my client is not sitting here suggesting that Mr. Irwin doesn't have a right to redress of his grievance here based upon the cause of action. What we are saying, though, is having elected to proceed on this very, very specific claim that the district court was correct in finding that Mr. Irwin's subsequent employment as a law enforcement officer. And again, he testified that what he does in his position with the tribe is everything that a law enforcement officer would do. We believe that based upon Mr. Irwin's employment in his chosen field, that he cannot recover under this very specific 14th Amendment liberty interest claim. Thank you. All right. Mr. Besby. Thank you, Your Honor. I'd like to start out by addressing the assertion that we made a substantive due process claim. That's not the case. We made a procedural due process claim under the 14th Amendment. Substantive due process asks the question of whether a deprivation is justified by a sufficient purpose. Procedural due process asks whether the government has followed the proper procedures. Our entire complaint is that the proper procedures in this case weren't followed. And we dispute the facts as to what Sheriff Trotter asserted in his memorandum. And Mr. Irwin was never given an opportunity to contest it nor was he even made aware of the existence of the memorandum until a year and a half after the fact when he had already applied for multiple other positions. How did he come to find out about Sheriff Trotter's memo? Your Honor, he actually sought to obtain his employee file from Churchill County on multiple occasions as he was getting these rejection letters. And he had a difficult time doing that until one day, basically, he got the right person on the phone who emailed him a copy. And as soon as he obtained it, you know, the fact that he failed background investigations for the first time made sense to him. And he immediately sought counsel. Is there a distinction between obtaining work with the tribal police versus obtaining work from a public entity, public safety officer? Certainly, Your Honor. There's a job with the state. You're a sworn peace officer in the state of Nevada. A tribal officer is almost like a private security employee. They don't have, as soon as they leave the reservation, they're not sworn peace officers in the state of Nevada. So there is a distinction in how those two things operate. And I just want to point out one additional fact for the court, if I may. But his testimony was that he's doing everything that a law enforcement officer does just on the reservation, right? Correct, Your Honor. Yes. Is anyone saying that a security guard is in the same field or profession as a police officer? You know, I believe that the defendants take that position. We disagree with that. And again, security companies don't have the right to obtain police officer employees' files. And there's no evidence in the record that they did in this case before Mr. Irwine obtained those jobs after he left Churchill County. One additional fact I'd like to point out is that the court itself, you know, on a motion for summary judgment by the plaintiff, determined that the statements in the memorandum involve questions of modality. And then when it considered the motion for summary judgment by the defendants, it ruled the opposite a few months later and determined that no reasonable juror could reach the same conclusion that the court itself reached months earlier. Under a motion for summary judgment, there's a duty to view the facts in the light most favorable to the non-moving party, us in this case. And we believe we presented a triable case for a 14th Amendment procedural due process claim. Let me just ask before your time, well, your time is up, but let me just ask anyway. What is the status of the state claims? Your Honor, we're waiting for this case to be finally disposed in terms of how to move forward. Is the statute of limitations told in your view? It is, Your Honor. Okay, all right. Are there any further questions by my colleagues? No, thank you. Okay, thank you very much. Irwine v. County of Churchill will be submitted.
judges: WARDLAW, NGUYEN, KOH